J-A04032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                              :         PENNSYLVANIA
            Appellant            :
                                                :
                                              :
            v.                     :
                                                :
                                              :
TYREEK GOODIN                :     No. 1771 EDA 2019

Appeal from the Order Entered June 4, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001943-2019

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED: FEBRUARY 8, 2021**

The Commonwealth of Pennsylvania appeals from the order entered in the Court of Common Pleas of Philadelphia County (trial court) denying its motion to refile the charges of attempted robbery and conspiracy brought against Tyreek Goodin (Goodin) and co-defendant Tyreek Jackson (Jackson). We reverse the trial court's order and remand for trial.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has also appealed the trial court's order as it relates to Jackson. We have issued a nearly identical Memorandum in that case, J-S04033-21.

**I.**

**A.**

On March 2, 2019, at approximately 7:30 p.m., Philadelphia Police Officer George Soto and his partner, Officer Pavone,[2] were on routine patrol near the 5600 block of Haverford Avenue. (**See** N.T. Preliminary Hearing, 3/18/19, at 4, 6). The officers observed two men dressed in ski masks and dark clothing, later identified as Goodin and Jackson, at a laundromat. (**See id.** at 5). Goodin was inside of the laundromat and Jackson was standing outside. (**See id.**).

As the officers approached, Jackson fled the scene and Officer Pavone pursued him on foot. (**See id.** at 6). Goodin started to exit the laundromat and Officer Soto directed him to stop and show his hands. (**See id.**). Goodin ignored this command and put his hands into his waist band. (**See id.**). After a brief struggle, Officer Soto was able to handcuff Goodin. (**See id.**). He recovered a black handgun from Goodin's person and women's jewelry from his book bag. (**See id.** at 6-7).

Police Officer Sergio Diggs responded to assist Officer Pavone in pursuit of Jackson. (**See id.** at 12). During the chase, Officer Diggs observed Jackson continuously grasp at the front of his waist band. (**See id.** at 13). Jackson pulled out a silver handgun and threw it over a fence when Officer Diggs

_____

[2] Officer Pavone's first name is not apparent from the record.

ordered him to drop it. (**See id.**). The officers took Jackson into custody and recovered the handgun. (**See id.** at 13-14, 18). Both defendants gave videotaped statements to Philadelphia Police Detective Jeffrey Opalski and Detective Francesco Campbell. (**See id.** at 20-21, 26, 28).

**B.**

The Commonwealth filed charges of attempted robbery, criminal conspiracy, firearms not to be carried without a license, carrying a firearm on a public street in Philadelphia and possession of an instrument of a crime against Goodin and Jackson.[3] At the March 18, 2019 preliminary hearing in the Philadelphia Municipal Court, Detective Opalski testified that Jackson "admitted to possessing the firearm that was recovered during his arrest. And he also admitted to attempting or taking part in robbing the Laundromat at 56th and Vine." (N.T. Preliminary Hearing, at 20).[4] Jackson indicated that he

---

[3] 18 Pa.C.S. §§ 901(a), 3701(a)(1)(ii), 903(c), 6106(a)(1), 6108 and 907(a).

[4] At the hearing, counsel for Goodin requested the court to recognize that Jackson's statement to detectives was inadmissible against Goodin and the court agreed. (**See** N.T. Preliminary Hearing, at 21). This rule prohibiting the use of a co-defendant's statement is "narrow, however, and does not apply when a co-defendant's confession is redacted to omit any specific reference to the defendant and can be linked to the defendant only by inferential incrimination. **See Commonwealth v. James**, 66 A.3d 771, 777 (Pa. Super. 2013) (concluding that appellant's rights under the Confrontation Clause were not violated by admission of his co-defendant's statement at their joint trial where all references to appellant were replaced with the neutral phrase 'the other guy' and the court issued appropriate cautionary instruction)." **Commonwealth v. Epps**, 240 A.3d 640, 650 (Pa. Super. 2020).

had gone inside of the laundromat and "admitted to . . . either a robbery or an attempted robbery of a Laundromat[.]" (*Id.* at 25.).

Regarding Goodin, Detective Opalski testified, "he admitted to possessing the firearm that was recovered during his arrest. He also admitted to taking part in a home invasion that occurred on 61st Street." (*Id.* at 21; *see id.* at 23, 26).

Detective Campbell testified that Goodin "told me pretty much they were attempting to rob this establishment [the laundromat]." (*Id.* at 29). When asked if he could be more specific, Detective Campbell explained:

> [Goodin] told me that they were going into the Laundromat with the intention to rob the Laundromat. During the incident, there was some kind of conflict between him and the other defendant. They exited the store and police were on location. He pretty much—one of them ran, a firearm was recovered and they were brought to Southwest Detectives.

(*Id.* at 30). Detective Campbell also agreed with defense counsel that Goodin essentially represented that he "backed out" of the robbery. (*Id.* at 31-32).

At the conclusion of the hearing, the municipal court dismissed the attempted robbery and conspiracy charges and held the defendants for trial on the remaining offenses. On March 21, 2019, the Commonwealth filed a motion in the trial court seeking to refile the charges. The court held a hearing on June 4, 2019, and it dismissed the motion after considering the parties'

arguments and the notes of testimony from the preliminary hearing.[5] The court found the Commonwealth's introduction of Goodin's statement recounting a disagreement with Jackson in the laundromat showed they renounced their planned robbery before taking a substantial step to carry it out. (*See* Trial Ct. Op., at 7-10). This timely appeal followed. The Commonwealth and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).[6]

## II.

## A.

The Commonwealth argues that the trial court erred in failing to grant its motion to refile the attempted robbery and criminal conspiracy charges against Goodin where the evidence at the preliminary hearing established probable cause that he committed the offenses.[7] The Commonwealth further claims any evidence of renunciation was not relevant at the preliminary

---

[5] The Commonwealth did not reopen the record or present additional evidence such as videotape surveillance footage from the laundromat or a 911 call transcript. (*See* Trial Court Opinion, 11/13/19, at 2, 9). However, the record reflects that videotape surveillance footage from the laundromat was preserved for trial and the defendants' statements to detectives were videotaped. (*See* N.T. Preliminary Hearing, at 24, 26-27, 29, 31-32).

[6] The Commonwealth has certified that the trial court's order terminates or substantially handicaps the prosecution. *See* Pa.R.A.P. 311(d).

[7] A trial court's decision regarding evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime, is a question of law as to which our review is plenary. *See Commonwealth v. Montgomery*, 234 A.3d 523, 533 (Pa. 2020).

hearing, as it is a defense and not one of the material elements of the crimes the Commonwealth was required to establish.

A preliminary hearing is not a trial and its principal function is to protect an individual's right against an unlawful arrest and detention. **See Montgomery**, **supra** at 533. "The Commonwealth bears the burden at the preliminary hearing of establishing a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." **Id.** (citation omitted). "The evidence supporting a *prima facie* case need not establish the defendant's guilt beyond a reasonable doubt, but must only demonstrate that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to proceed to a jury." **Id.** (citation omitted). "The Commonwealth establishes a *prima facie* case where it produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." **Id.** (citation omitted). At the preliminary hearing stage, the court must view the evidence and reasonable inferences drawn therefrom in the light most favorable to the Commonwealth. **See id.** at 537.

Regarding the attempted robbery charge in the instant case, the Pennsylvania Crimes Code provides that a defendant is guilty of robbery if "in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). Additionally, "a person commits an attempt when, with

intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "The elements of criminal attempt are: (1) an intent to commit a specific crime; and (2) any act constituting a substantial step toward the commission of that crime." *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa. Super. 2003). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Id.* (citation omitted). "The defendant **need not actually be in the process of the crime** when arrested in order to be guilty of criminal attempt." *Id.* (citation omitted; emphasis added).

The offense of criminal conspiracy requires proof of three elements: "1) an agreement, 2) shared criminal intent, and 3) an overt act." *Commonwealth v. Jordan*, 212 A.3d 91, 96 (Pa. Super. 2019) (citation omitted); *see also* 18 Pa.C.S. § 903. Because conspiracy by its nature is often difficult to prove due to a lack of direct evidence, courts look to the conduct of the parties and the surrounding circumstances to link the accused to the alleged conspiracy. *See Jordan*, *supra* at 97. Circumstances relevant to this analysis include an association between the alleged conspirators; knowledge of the crime and presence at the scene; and post-crime conduct such as flight, as it tends to demonstrate consciousness of guilt. *See id.*

Central to the trial court's disposition in this case is the defense of renunciation to the crime of criminal attempt. It provides in relevant part as follows:

**(c) Renunciation.—**

(1) In any prosecution for an attempt to commit a crime, it is a defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

(2) A renunciation is not "voluntary and complete" within the meaning of this subsection if it is motivated in whole or part by:

(i) **a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal enterprise**, or which render more difficult the accomplishment of the criminal purpose[.]

18 Pa.C.S. § 901(c)(1),(2)(i) (emphasis added).

## B.

Applying this construct to the instant appeal, we conclude that it is clear the Commonwealth presented sufficient evidence at the preliminary hearing to establish a *prima facie* case of attempted robbery and conspiracy. Specifically, the evidence showed that Goodin and Jackson were armed when the entered the laundromat, wore ski masks and dark clothing to conceal their identities and blatantly disregarded police officers' commands. The inculpatory statements Goodin and Jackson made to police detectives indicate

that they entered the laundromat with an agreement to rob it. Additionally, Jackson immediately fled from the laundromat upon the arrival of police, signaling consciousness of guilt.

Concerning the defense of renunciation raised by Goodin's statement that he and Jackson had a disagreement and backed out of the robbery, while the co-defendants may offer into evidence at trial and argue to the jury that they had a disagreement and abandoned the planned robbery, this defense theory does not negate the fact that the Commonwealth established a *prima facie* case of attempted robbery and conspiracy at the preliminary hearing. Moreover, to consider this defense would require the fact-finder at the preliminary hearing to resolve questions regarding the weight and credibility of the evidence, which we have stated must be resolved by the fact-finder at trial. **See Commonwealth v. Hilliard**, 72 A.3d 5, 14 (Pa. Super. 2017); **Commonwealth v. Landis**, 48 A.3d 432, 448 (Pa. Super. 2012).

Because we conclude the trial court erred in rejecting the Commonwealth's motion to reinstate the charges, we reverse its order and remand the case for trial.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/21